UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,

        Plaintiff,

v.

Lorenzo Buckingham, Jr.,

        Defendant.

Case No. 3:19-cr-597

MEMORANDUM OPINION
AND ORDER

### I. INTRODUCTION

Defendant Lorenzo Buckingham, Jr. seeks to suppress evidence seized during a search of an apartment in which he resided. (Doc. No. 59). The government filed a brief in opposition to Buckingham's motion, (Doc. No. 61), and Buckingham has filed a brief in reply. (Doc. No. 62). For the reasons stated below, I deny Buckingham's motion.

### II. BACKGROUND

On October 2, 2019, Buckingham and three co-defendants were indicted by a grand jury empaneled in the Northern District of Ohio, Western Division. (Doc. No. 1). The single-count indictment charged all four co-defendants with conspiring to distribute heroin in violation of 21 U.S.C. §§ 841(A)(1), (b)(1)(A), (b)(1)(B), and 846. On the same day, then-Magistrate Judge James R. Knepp, II authorized an arrest warrant for Buckingham. (Doc. No. 5).

One week later, Buckingham was arrested in a one-bedroom apartment located on Eastgate Road in Toledo, Ohio. When law enforcement officers entered the apartment, they found

Buckingham in the apartment's main room. Officers observed him attempting to hide cash under a couch and also found in plain view two baggies containing marijuana. (Doc. No. 59-2 at 3). Toledo, Ohio Police Department SWAT team officers then conducted a protective search to determine if anyone else was in the apartment or if there were any risks to officer safety. (Doc. No. 59-1 at 3).

After the protective sweep, Deputy Sheriff D.S. Knorek, a member of the Lucas County, Ohio Sheriff's Office and the Toledo Metro Drug Task Force, prepared and submitted an affidavit in support of an application for a search warrant. (Doc. No. 59-1 at 2-4). Lucas County Court of Common Pleas Judge Lindsay Navarre approved the warrant. (Doc. No. 59-1 at 1). Officers seized a variety of items, including marijuana and drug paraphernalia, five cell phones, over $2,000 in cash, and a loaded 9mm handgun. (Doc. No. 59-2 at 3).

Buckingham represents that he does not challenge the arrest warrant or the search incident to arrest which revealed the cash and marijuana. (Doc. No. 59 at 2). He contends, however, that officers exceeded the permissible scope of a protective sweep by opening and searching in dresser drawers. (*Id.*). Buckingham first alleges officers located "a gun, a scale, weights, a grinder, and other items in the dresser of the bedroom," (*id.* at 3), and later claims an unnamed officer yelled "'we've got a gun'" before Buckingham was presented with the arrest warrant. (Doc. No. 62 at 3). Buckingham argues any evidence seized after the initial, permissible search incident to arrest must be suppressed because officers would not have sought the search warrant if they had not discovered the gun and other contraband during the allegedly illegal search of the dresser drawers.

### III.  ANALYSIS

The Fourth Amendment generally requires law enforcement officers to obtain a warrant, based upon probable cause, before searching a location in which an individual has a reasonable expectation of privacy. *See, e.g., Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018) ("When an individual 'seeks to preserve something as private,' and his expectation of privacy is 'one that society

2

is prepared to recognize as reasonable,' we have held that official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause.") (further citation omitted). Probable cause is the "reasonable grounds for belief" that evidence of a crime may be found in a certain place or location. *United Stated v. Lattner*, 385 F.3d 947, 951 (6th Cir. 2004) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). "Probable cause exists when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Loggins*, 777 F.2d 336, 338 (6th Cir. 1985) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

This case involves two warrants – an arrest warrant and a subsequently-obtained search warrant. Buckingham argues the second warrant must be invalidated because it allegedly is tainted by an illegal search conducted in the aftermath of the entry by law enforcement officers into the apartment while executing the arrest warrant. (Doc. No. 59 at 1-2). He seeks a hearing to determine "whether the decision to seek the [search] warrant was itself tainted by the illegal search." (*Id.* at 4).

The government opposes both Buckingham's request for a hearing and his motion to suppress. (Doc. No 61). The government argues the search warrant was supported by probable cause and that Buckingham has not demonstrated an evidentiary hearing is required. (*Id.* at 1).

Buckingham's motion principally involves the exclusionary rule and the "independent source" doctrine. Under the independent source doctrine, evidence which otherwise would be subject to exclusion (because it was acquired as a direct or indirect result of an unlawful search) is admissible if the evidence subsequently was "obtained independently from activities untainted by the initial illegality." *Murray v. United States*, 487 U.S. 533, 537 (1988). The Supreme Court has described the rationale supporting the independent source doctrine in this manner: "the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse, position

3

that they would have been in if no police error or misconduct had occurred." *Nix v. Williams*, 467 U.S. 431, 443 (1984).

Buckingham raises what he describes as "serious questions about the sequence of events that led to law enforcement obtaining and executing the search warrant." (Doc. No. 62 at 4). He implies he would testify that officers opened and searched dresser drawers, which exceeds the permissible scope of a protective sweep, and that one officer yelled "'we've got a gun!'" during the course of that search. (Doc. No. 59 at 2-3; Doc. No. 62 at 3). He also points out apparent errors in the police report, including the passage of only two minutes between the time of his arrest and the completion of the arrest report, and that the report does not indicate what time the officers executed the search warrant. (*See* Doc. No. 59-2 at 1, 3).

There are several key facts, however, which are not in dispute. Buckingham does not dispute that officers found him in the living room of the apartment with marijuana and a large amount of cash when they entered the apartment to take him into custody pursuant to an arrest warrant issued in a case in which he was indicted for drug trafficking. (Doc. No. 59 at 2; Doc. No. 62 at 3). Nor does he dispute that the search warrant affidavit makes no reference to any items located in any room other than the living room. (Doc. No. 59-1 at 3 (stating officers found cash and marijuana near Buckingham when he was arrested and asserting, "[b]ased on . . . training and experience," that Buckingham likely was storing "marijuana and proceeds" inside the apartment")). Instead, Judge Navarre's probable-cause determination was made only through consideration of facts which Buckingham concedes were untainted by any alleged constitutional violation.

A defendant is entitled to an evidentiary hearing on a motion to suppress "only if the motion is sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Ickes*, 922 F.3d 708, 710 (6th Cir. 2019) (quoting *United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006)). A

hearing is not required if there are no "issues of fact material to the resolution of the defendant's constitutional claim." *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996).

Buckingham's contention that, in these circumstances, officers would not have sought a search warrant for the apartment is only conjecture. Even if I presume Buckingham's allegations are true – a presumption he would not be entitled to during an evidentiary hearing – the Supreme Court has explicitly rejected calls to exclude evidence when "[i]nvoking the exclusionary rule would put the police (and society) not in the *same* position they would have occupied if no violation occurred, but in a *worse* one." *Murray*, 487 U.S. at 541 (emphasis in original). The record before me clearly establishes that knowledge of the gun and other contraband was "cleanly obtained . . . through an independent source." *Id.* at 538-39 (citation omitted).

## IV. CONCLUSION

I conclude Buckingham has not demonstrated any evidence seized subsequent to his October 9, 2019 arrest is subject to exclusion under the Fourth Amendment. Therefore, and for the reasons set forth above, I deny his request for a hearing and his motion to suppress. (Doc. No. 60).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge